# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| V. | § | CASE NO. 4:12CR155 |
| | § | |
| ANSON CHI | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

This matter having been referred by the Honorable Richard A. Schell (*see* Dkt. 102), the Court has considered Defendant's Motion to Suppress Statements (Dkt. 94). After considering the evidence and arguments presented at the hearing held on May 29, 2014, the Court finds that the motion should be denied.

Defendant is charged in this matter with possession of a firearm not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§5841, 5845, 5861(d) and 5871, malicious use of explosive materials, in violation of 18 U.S.C. § 844(i), use or carrying a destructive device during a crime of violence, in violation of 18 U.S.C. §924(c)(1)(B)(ii), and false declarations before a court, in violation of 18 U.S.C. §1623. In his motion, he seeks to suppress any oral statements he made to law enforcement, arguing that they were made involuntarily, without the administration of his *Miranda* warnings, and after he was tortured while hospitalized in June 2012.

### FACTUAL BACKGROUND

According to the Government's allegations, Defendant was injured on June 18, 2012 after an explosive device he constructed detonated. He was hospitalized and underwent surgery as a

1

result. On June 22, 2012, FBI Task Force Officer James D. Wofford and Special Agent Richard Burkhead, Jr. interviewed and arrested Defendant while he was at Parkland Hospital recovering from his injuries. Law enforcement again met with Defendant on June 23, 2012 and June 24, 2012. Defendant claims that these statements were not given voluntarily and were the result of torture by medical staff and law enforcement.

## AUTHORITY

The Fifth Amendment protects an individual's right to be free from compelled self-incrimination. Thus, the Government may use at trial only those confessions that are voluntarily made. 18 U.S.C. § 3501(a); *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). To protect this right, statements obtained during a custodial interrogation of an accused cannot be used unless the accused has been advised of his right to remain silent and right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 473 (1966). The requirement of *Miranda* that police advise an accused of his rights prior to questioning applies only if the accused is "in custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 445; *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). The determination of whether a person is in custody for *Miranda* purposes must be made on a case-by-case basis considering all the objective circumstances. *Stansbury*, 511 U.S. at 323, 114 S.Ct. 1526. A suspect is "in custody" for the purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Courtney,* 463 F.3d 333, 337 (5th Cir. 2006) (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988)).

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 100 S. Ct. 1682, 1689–90, 64 L. Ed.2d 297 (1980). As such, when the subject of the questioning transformed from routine questioning to questions calculated and intended to elicit a criminally incriminating response, an interrogation is considered to have commenced for purposes of *Miranda*. *See id.*; *see also U.S. v. Chavira*, 614 F.3d 127, 133, n8 (5th Cir. 2010).

### EVIDENCE PRESENTED

At the hearing held on May 29, 2014, the Government offered the testimony of Agent Wofford, an FBI task force officer for the joint terrorism task force. Defendant, who refused to be sworn and thus did not testify, did not offer any witnesses.

Agent Wofford testified that he first met with Defendant on June 22, 2012 (four days after the explosion) at Parkland Hospital to take him into custody on a federal arrest warrant and to conduct an interview. Wofford was accompanied by his partner, Agent Burkhead, and doctors advised them that Defendant was coherent. According to Wofford, when he advised Defendant that he was under arrest, Defendant was awake in his hospital bed but with his hands and chest bandaged. Wofford testified that Defendant agreed to talk to them and acknowledged his understanding that he was under arrest.

After advising Defendant that he was under arrest, the officers spoke with Defendant for approximately 45 minutes about his background, family history and educational history. According

to Wofford, Defendant was not yet given any *Miranda* warnings but appeared lucid, was able to communicate, and did not appear to have any mental disabilities.

After speaking with Defendant about his background, Wofford testified, a Form FD-395 advice of rights form was read to Defendant. Because of the bandages on his hands, Defendant was unable to sign the form, but – Wofford testified – Defendant repeated his rights back to officers twice and agreed to waive those rights. According to Wofford, Agent Burkhead made a notation on the form at that time, noting that Defendant was unable to sign because of his injuries but that he agreed to waive his rights. The Government offered a copy of the June 22, 2012 Form FD-395 with Burkhead's notations, and it was admitted into evidence.

According to Wofford, nurses came in and out during the June 22, 2012 interview and Defendant appeared ready to converse about the allegations against him. Wofford also testified that the officers made no promises as to what the prosecutors or court would do regarding any charges against him and were not untruthful to Defendant. Wofford testified that the officers did not ask Defendant any specifics about the June 18, 2012 explosion before the *Miranda* warnings were given.

Wofford testified that he and his partner also spoke with Defendant on June 23, 2013. According to Wofford, on that date, Defendant recognized the officers and called them by name. Wofford testified that, when the officers indicated that they needed to administer his *Miranda* warnings again, Defendant stated that he knew the routine. Once again, Wofford stated, Defendant read his rights outloud from a form. Defendant repeated his rights back to officers twice and the form was held up to him. According to Wofford, Defendant was again unable to sign the form but

4

both he and Burkhead signed it as witnesses. The June 23, 2012 Advice of Rights form was offered and admitted into evidence at the suppression hearing.

According to Wofford, when Defendant was advised of his rights on June 23, 2012, Defendant appeared to understand his rights, seemed relaxed in the hospital setting, did not appear to be under the influence of alcohol or drugs that would make him unable to understand, and appeared mentally able to waive his rights. According to Wofford, Defendant had access to the telephone and bathroom during the interview. Wofford also testified that Defendant appeared to be relieved to have offered his statement.

Wofford testified that officers were advised on June 24, 2012 that Defendant wanted to speak to them again. Wofford went to the hospital to meet with Defendant. According to Wofford, Defendant greeted him and called him by name. Wofford testified that Defendant again indicated that he knew the procedure as to the advice of rights, and the form was once again read to Defendant. Defendant again indicated that he understood his rights and wished to proceed without a lawyer. According to Wofford, there was hospital staff in the room when he read the form to Defendant and when Defendant verbally waived his rights. The June 24, 2012 FD-395 Advice of Rights form, which was admitted into evidence at the suppression hearing, contains the signature of two such witnesses and Wofford.

As to the June 24, 2012 interview, Wofford testified that Defendant did not appear to be under the influence of any substance and did not appear to suffer from any mental problems. According to Wofford, Defendant appeared relaxed and did not ask for food or water. Wofford testified that Defendant had access to the telephone and bathroom, and he made no promises to

Defendant as to what the prosecutor or court would do in the case and made no untruthful statements to Defendant.

Wofford testified that Defendant seemed anxious to speak to law enforcement at the June 24, 2012 interview and explained that he had been tortured by hospital staff. According to Wofford, the June 24, 2012 interview was the first time Defendant had claimed to him that he was being tortured.

Upon cross examination by Defendant, Wofford testified that he had no independent information that Defendant was tortured and did not know the specific names of the three officers who guarded Defendant – in uniform – in room 231. According to Wofford, he reported Defendant's allegations of torture to his supervisor. Wofford also testified that the Plano Police Department conducted an internal affairs investigation as to Defendant's allegations of torture and it was concluded that there was no evidence of torture and that Defendant's allegations were unfounded.

Defendant offered into evidence, and the Court admitted, a May 13, 2013 letter from the Plano Police Department regarding a complaint filed by Defendant.

## ANALYSIS

Having heard the evidence presented, the Court finds that Defendant's statements were freely and voluntarily made after his arrest. The Government offered both testimony and documentary evidence to show that, on three separate occasions, Defendant was advised of his rights, that Defendant indicated he understood those rights, and that he knowingly waived them. Defendant offered no evidence or argument at the hearing to contest that officers read him his *Miranda* warnings or that he failed to make a knowing waiver of them.

As to the 45-minute interview after Defendant was arrested but prior to his rights being read to him, the Court finds that none of the questions were calculated or intended to elicit a criminally incriminating response for purposes of *Miranda*. *Innis,* 446 U.S. 291, 100 S. Ct. 1682, 1689–90.

As to the statements made after the *Miranda* warnings, The testimony presented indicated that Defendant was lucid, aware of the circumstances of the interview, and not under the influence of any drugs or substances that would affect his ability to speak with officers. The testimony further indicates that, although he was under arrest, bathroom facilities and a telephone were made available to him, food and water were not withheld from him, and officers did not use any coercive tactics or make any promises to him in order to get him to speak to them. As to his allegations of torture, there is no evidence before the Court that would substantiate Defendant's claims or any evidence that would show that Defendant was physically harmed in any way by the officers interviewing him on the three separate days — one of which Defendant initiated.

The Court finds that the statements Defendant seeks to suppress were made after clear *Miranda* warnings were administered and knowingly and voluntarily waived. Without any other evidence that would show that the statements were not voluntarily given, the motion to suppress should be DENIED and Defendant's statements shall be admissible against him.

## RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress Statements (Dkt. 94) be DENIED. Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.; Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 30th day of May, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE